BRYSON, Circuit Judge,
dissenting.
Because I do not interpret the decision of the Board of Patent Appeals and Interferences to be based on a new ground for rejecting Nouvel’s claims, I respectfully dissent.
The majority asserts that “the key question in this appeal ... is why an ordinary artisan would thicken only one arm of Liou’s pliers.” Nouvel similarly argues that one of ordinary skill in the art would never thicken just one arm of the pliers, because to do so without thickening the other arm would not increase the overall strength of the pliers. I disagree that the question in this case is whether (or why) one of ordinary skill in the art would thicken only one arm of a pair of pliers. The invention is not thickening one arm of a pair of pliers while not altering the thickness of the other. The invention is using an omega-shaped plate to cover the por *94 tion of a pliers arm that protrudes above the level of the recess in which it is received. Because the claims would read on a pair of pliers in which both arms protrude beyond the recesses in which they are received, or in which the strength of the non-protruding arm is made equal to the strength of the protruding arm by the support provided by the plate, it is irrelevant whether there would be any reason to strengthen one arm of a pair of pliers without strengthening the other.
The examiner’s analysis, like the Board’s, was based on the two principal references, Herbert and Liou. The Herbert reference, cited by the examiner and the Board, discloses a pair of pliers with a first arm that protrudes above the depth of the recess in the second arm. The Liou reference, also cited by the examiner and the Board, discloses a plate covering the recess in the second arm and the portion of the first arm contained within that recess. The question before the examiner and the Board was therefore whether it would be obvious to a person of ordinary skill in the art to cover the thickened arm of Herbert with the plate of Liou by modifying the shape of the plate to accommodate the protruding portion of the first arm. The examiner and the Board both found that modifying the plate of Liou by raising the center of the plate in order to accommodate the protruding portion of the first arm would be obvious to a person of skill in the art. As the Board put it, “the corresponding modification of Liou’s panel ... to provide an offset in the central portion thereof to accommodate the thickness of the intermediate section ... extending beyond the recess ... in the raised or offset arm configuration would involve only ordinary creativity, and would not be uniquely challenging to a person of ordinary skill in the art.”
The Board explained that neither Herbert nor Liou attributed any significance or criticality to the depth of the recess in the first arm relative to the thickness of the intermediate section of the second arm. Accordingly, the Board stated, the option to select either the non-protruding second arm of Liou or the protruding second arm of Herbert would have been obvious to a skilled artisan. The Board added that to recognize that thickening the intermediate section on Liou’s first arm without increasing the depth of the recess in Liou’s second arm “would produce a stronger [first arm] without weakening or requiring additional thickness in the [second arm] involves only a rudimentary understanding of mechanics and is a simple matter of common sense, well within the technical grasp of a person of ordinary skill in the art.”
In light of those well-supported findings, this case cries out for the application of the principles of KSR International Co. v. Teleflex Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). There are only a “finite number of identified, predictable solutions” to strengthen a metal component. Id. at 402-03, 127 S.Ct. 1727. One such approach — one that the Board found would be obvious to a person of skill in the art— would be to make the metal arm thicker. And in fact that is the exact arrangement contemplated by Herbert, which describes a set of pliers in which an arm is thicker than the recess provided for it.
The majority concludes that remand is required because the Board introduced “common sense” as a new ground of rejection. The majority asserts that the examiner’s rejection of Nouvel’s claims was grounded solely in the teachings of Liou and Herbert, and that the Board substituted “common sense” for the Herbert reference as a reason why, in combination with the teachings of Liou, the claims were *95 obvious. I disagree with that characterization of the Board’s decision.
The Board’s reference to “common sense” was not a new ground of rejection, but simply a way of describing matters that would be plain to a person of ordinary skill in the art. As the Board put it, recognizing that thickening one arm without making the other arm thinner would increase the strength of the first arm without weakening the second “involves only a rudimentary understanding of mechanics and is a simple matter of common sense, well within the technical grasp of a person of ordinary skill in the art.” As the full quotation makes clear, the Board’s use of the term “common sense” was simply a way of emphasizing that the knowledge required to understand the effect of thickening one arm without reducing the thickness of the other is not only well within the knowledge of a skilled artisan, but is “rudimentary.” The Board’s analysis thus uses the term “common sense” in the context of its focus on the understanding of a person of ordinary skill in the art. And in so doing, the Board followed the same analytical path as the examiner, who wrote that it “would have been obvious to one of ordinary skill in the art, at the time the invention was made, to modify the invention of Liou with an Omega shaped plate to accommodate a second arm having thicker dimension” in an application requiring higher strength or structural integrity. Implicit in that comment is that in order to increase the strength of a metal component, the common sense approach— particularly to one of skill in the art— would be to increase its thickness.
Common sense, used in connection with the knowledge of a person skilled in the art, is an inherent component of an examiner’s consideration of an application. As we have explained, “the sources of information for a properly flexible obviousness inquiry ... include ... the background knowledge, creativity, and common sense of the person of ordinary skill.” Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1329 (Fed.Cir.2009). The examiner’s analysis “may include recourse to logic, judgment, and common sense available to a person of ordinary skill that do not necessarily require explication in any reference or expert opinion.” Id. Here, both the examiner and the Board relied on the sensible and uncontroverted proposition that in order to strengthen a metal component, a person of ordinary skill would increase its thickness. Because both the examiner’s rejection and the Board’s decision were based on principles known to persons of skill in the mechanical arts in conjunction with the teachings of the Herbert and Liou references, the Board’s decision does not contain a new ground of rejection. I would affirm the Board’s determination.