NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC,**
*Appellants*

**v.**

**NETLIST, INC.,**
*Appellee*

---

2024-1312, 2024-1313

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00744, IPR2022-00745.

---

Decided: February 20, 2026

---

MICHAEL RUECKHEIM, Winston & Strawn LLP, Redwood City, CA, argued for appellants. Also represented by JUANC YAQUIAN, Houston, TX.

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for appellee. Also represented by RICHARD CRUDO; JONATHAN M. LINDSAY, Irell & Manella LLP, Newport Beach, CA; JASON SHEASBY, HONG

ANNITA ZHONG, Los Angeles, CA; PHILIP J. WARRICK, Washington, DC.

_____

Before DYK, PROST, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC appeal two final written decisions by the Patent Trial and Appeal Board, which found that appellants failed to prove certain claims would have been unpatentable as obvious. We affirm.

BACKGROUND

I.

Appellee Netlist, Inc. ("Netlist") owns U.S. Patent No. 10,489,314 ("'314 patent"). The '314 patent is directed to a "memory module," which allows a computer to access and retrieve information needed for processing tasks. J.A. 1725, ¶17. One exemplary memory module from the '314 patent is disclosed in Figure 1, reproduced below.



FIG. 1

J.A. 50.[1]

The memory module 10 (red) includes two "ranks" 32 (green), i.e., rows of memory devices, that communicate with a logic circuit 40 (blue). The logic circuit, in turn, processes data received from and sent to an external memory controller 20 (yellow) located elsewhere in the computer. Data signals travel to and from the memory module along a data bus (i.e., the group of data lines labeled "DQ").

Relevant here are two aspects of the '314 patent. The first is that the '314 patent requires the ranks to operate non-concurrently, meaning that only one rank is activated at a time. To read data from, or write data to, a particular rank, the rank must be "activated." J.A. 73, 2:64–66. In order to activate the rank, the memory controller sends "chip select signals" to the logic circuit, which in turn sends corresponding "registered chip select signals" to the ranks. J.A. 73–74, 2:64–3:3. If a rank receives an "active" registered chip select signal, the rank will activate. J.A. 81, 18:21–60. Contrastingly, if a rank receives a "non-active" registered chip select signal, the rank will not activate. *Id.*

The second is that the '314 patent discloses a memory module in which the memory controller communicates data with the memory module at the same speed that the memory module communicates data internally with its ranks. J.A. 79, 14:18–21; J.A. 84, 23:50–55. So, for example, as disclosed in one embodiment, in an equivalent time period, the same amount of data is transmitted from the ranks to the logic circuit as is transmitted from the memory module to the memory controller. J.A. 57 (Fig. 7).

Independent claims 1 and 15 are representative. Claim 1's preamble recites "[a] memory module operable in

---

[1]    This version of Figure 1 was presented in appellee's response brief, including the annotations and coloring. Response Br. 7.

a computer system to communicate data with a memory controller of the computer system at a specified data rate." J.A. 93, 42:12–14.    Claim 1 goes on to recite that the memory module comprises:

> a plurality of memory integrated circuits . . . , wherein the plurality of N-bit wide ranks include a first rank configured to receive or output the first burst of N-bit wide data signals and the first burst of data strobes at *the specified data rate* in response to the first memory command, and a second rank configured to receive or output the second burst of N-bit wide data signals and the second burst of data strobes at *the specified data rate* in response to the second memory command . . . .

J.A. 93, 42:28–38 (emphases added).    Relevant here, the preamble requires that the memory module communicate data with a memory controller at "*a* specified data rate." Then, the body of the claim requires that the memory module's logic enables circuitry to communicate data with the ranks at "*the* specified data rate."

> Claim 15 recites a memory module comprising:

> [15.3] logic . . . configured to receive a first set of input address and control signals associated with a first read or write memory command and to output a first set of registered address and control signals in response to the first set of input address and control signals,

> [15.4] the first set of input address and control signals including a first plurality of input chip select signals,

> [15.5] the first set of registered address and control signals including a first plurality of registered chip select signals corresponding to respective ones of the first plurality of input chip select signals,

[15.6] the first plurality of registered chip select signals including a first registered chip select signal having an active signal value and one or more other registered chip select signals each having a non-active signal value;

[15.7] memory devices . . . arranged in a plurality of N-bit wide ranks, wherein the plurality of N-bit wide ranks are configured to receive respective ones of the first plurality of registered chip select signals, wherein a first N-bit wide rank in the plurality of N-bit wide ranks receiving the first registered chip select signal having the active signal value is configured to receive or output a first burst of N-bit wide data signals and a first burst of data strobes associated with the first read or write command . . . .

J.A. 94–95, 44:47–45:14.[2]

## II.

Micron filed two inter partes review ("IPR") petitions challenging certain claims of the '314 patent as obvious over prior art reference "Halbert," and other prior art references not at issue on appeal.[3]

## A.

In the first proceeding, IPR2022-00744 ("-744 IPR Proceeding"), Micron challenged independent claim 1 and certain of its dependents (claims 2–3, 5, 6, 8–10, and 12–14). J.A. 9–13. Concerning independent claim 1, the Board determined that Micron failed to show that Halbert would

---

[2]    The limitation numbering [15.3]–[15.7] follows the numbering used by the parties both before the Board and on appeal.

[3]    Halbert is a patent application directed to memory modules. J.A. 1328–45.

have rendered obvious claim 1's "specified data rate" limitations. J.A. 9–14. Underlying this determination was the Board's construction of "specified data rate." J.A. 6–9.

Before the Board, both parties agreed that claim 1's preamble of "a specified data rate" is limiting and provides an antecedent basis for the "the specified data rate" recited in the body of the claim. J.A. 7. Specifically, the preamble recites a "memory module operable in a computer system to communicate data with a memory controller of the computer system at *a specified data rate.*" J.A. 93, 42:12–14 (emphasis added). The body of claim 1, in relevant part, recites ranks "configured to receive . . . data . . . at *the specified data rate.*" J.A. 93, 42:30–33 (emphasis added). Thus, the Board concluded that later recitations of "the specified data rate" in claim 1 refer to the "same data rate as 'a specified data rate' in the preamble, which is the rate at which data are communicated between the memory module and the memory controller." J.A. 8.

Applying this construction, the Board determined that Micron failed to show that Halbert teaches that its ranks communicate data at the same rate at which data is communicated between the memory module and the memory controller. J.A. 13. The Board found that (1) Halbert's ranks communicate one piece of data over one clock cycle (1:1) and (2) Halbert's memory module communicates two pieces of data over one clock cycle (2:1). J.A. 12. In other words, the Board found that Halbert's ranks operate at half the rate as data communicated by the memory module. J.A. 10–11. This configuration is illustrated below in Halbert's Figure 4, with ranks (140 and 142) each communicating one piece of data over a clock cycle, and with the

memory module communicating to the module controller (110) two pieces of data over a clock cycle.



J.A. 1332.[4] Thus, because Halbert's ranks operate at a different data rate than its memory module, the Board concluded Micron failed to show that Halbert's ranks teach the "specified data rate" limitations. J.A. 13. Based on this determination, the Board upheld the challenged claims. J.A. 4.

## B.

In the second proceeding, IPR2022-00745 ("-745 IPR Proceeding"), Micron challenged independent claim 15 and certain of its dependents (claims 16–20 and 22–27), as well as independent claim 28 and its dependents (claims 29–33). J.A. 21–33. Concerning independent claims 15 and 28, the Board noted that Micron relied on the same arguments for both claims and thus only addressed

---

[4]     The red notations displayed in Figure 4 above were included by Netlist in its briefing before the Board. *See* J.A. 1670.

claim 15.  J.A. 22.[5] Claim 15 discloses a memory module with ranks, the ranks of which are "configured to receive" a "first plurality of registered chip select signals."  J.A. 94–95, 44:47–45:8.  Claim 15 also discloses that "the first plurality of registered chip select signals includ[es] a first registered chip select signal having an active signal value and one or more other registered chip select signals each having a non-active signal value."  J.A. 94–95, 44:65–45:3.

Before the Board, Micron argued that claim 15 was rendered obvious by the combination of: (1) Halbert's Figure 2, an embodiment of ranks with chip select signals that was prior art to Halbert, and (2) Halbert's Figure 4, an embodiment of a memory module.  J.A. 27–33.  The Board determined that Micron failed to show that a skilled artisan would have been motivated to combine the chip select signals in Figure 2 with the memory module disclosed in Figure 4.  *Id.*

The Board acknowledged Micron's argument that a skilled artisan would have included Figure 2's chip select signals in Figure 4's memory module.  J.A. 27.  Specifically, Micron argued that there was a motivation to do so because Figure 4's memory module "is just another design" for the Figure 2 embodiment, so it would have been obvious to combine them.  J.A. 2386; *see also* Appellants Br. 42 (noting that both figures had the "same type of . . . memory module architecture" (citing J.A. 2386)).

The Board rejected this argument.  J.A. 27 (noting that Micron did "not address sufficiently how Halbert's Figure 4 device would operate with active and non-active chip select signals, *as recited in claim 15*" (emphasis added)).  As previously noted, claim 15 requires chip select signals to have active and non-active signals, as disclosed in limitation

---

[5]   On appeal, like below, claim 15 and claim 28 rise and fall together. Thus, we only address claim 15.

15.6.  *See* J.A. 94–95, 44:66–45:3.  The Board explained that Micron's "lack of explanation as to how active and non-active signals would affect the operation of Halbert's Figure 4 device is significant."  J.A. 27.  The Board found that Figure 4's memory module has concurrently operated ranks in order to achieve increase throughput.  J.A. 30.  According to the Board, incorporating Figure 2's active and non-active chip signals into Figure 4's concurrently operated memory module would result in a slower memory module, impacting the memory module's performance.  J.A. 30–31.  The Board found that Micron failed to explain why a skilled artisan would have been motivated to make the combination, resulting in a non-concurrently operated memory module, "accounting for the performance impact of not operating [the] ranks . . . concurrently."  J.A. 31.

The Board then rejected Micron's additional argument that its proposed combination rendered claim 15 obvious.  J.A. 31–32.  Micron argued Figure 2's chip select signals would have been implemented into Figure 4 in a "variety of well-known and obvious ways," specifically, that Figure 2's chip select signals could have been incorporated into Figure 4 in order to select data between the ranks for output to Figure 4's buffer.  *Id.*  The Board rejected this argument because such a configuration would require the chip select signals to be sent from Figure 4's memory controller to its multiplexer, and not from the memory controller to the ranks.  And as the Board explained, "[i]f the active and non-active signals are only used at the [multiplexer] and are not sent to the [ranks], then the combination does not show [ranks] that are 'configured to receive'" registered chip select signals, as required by claim 15.  J.A. 32.

Micron appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

10                MICRON TECHNOLOGY, INC. v. NETLIST, INC.

## DISCUSSION

Micron raises three issues on appeal. First, Micron argues that in the -744 IPR Proceeding, the Board implicitly misconstrued "data rate" within the term "specified data rate." Second, Micron argues that in the -745 IPR Proceeding, the Board legally erred in its motivation-to-combine analysis. Finally, Micron argues that in the -745 IPR Proceeding, the Board misconstrued limitation 15.6. We address each argument in turn.

Obviousness is a question of law based on underlying factual findings, including the "scope and content of the prior art" and "the presence or absence of a motivation to combine" references. *B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1379 (Fed. Cir. 2020). We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1001 (Fed. Cir. 2023). We review the Board's claim construction based on intrinsic evidence de novo and subsidiary factual findings based on extrinsic evidence for substantial evidence. *Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1358 (Fed. Cir. 2023).

## I.

Micron argues that in the -744 IPR Proceeding, the Board implicitly misconstrued claim 1's "specified data rate." Appellants Br. 29, 32. Specifically, Micron takes issue with the Board's construction of "data rate" within the term "specified data rate." According to Micron, the Board erroneously construed this term as "a specific unit of measurement—a piece of data per clock cycle." Appellants Br. 29, 32. But, according to Micron, the plain and ordinary meaning of "data rate" is simply a ratio of two things. Oral argument 4:55–5:08 ("Rate just means ratio, rate means per, rate does not mean per clock cycle."). Thus, under this broad meaning, Micron argues Halbert discloses two ratios which meet the "specified data rate" limitation. Appellants Br. 34. For the following reasons, we reject

Micron's position that the Board implicitly misconstrued "data rate."

As an initial matter, we need only construe terms to the extent necessary to resolve the patentability controversy. *Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1341 (Fed. Cir. 2024). Thus, for deciding the patentability controversy before us, we need only decide whether the plain and ordinary meaning of claim 1's "data rate" is broad enough to encompass the two ratios proffered by Micron—a ratio of rates between two pairs of devices and a ratio of data per strobe cycle. Appellants Br. 34, 36. We conclude that it is not that broad. These two ratios cannot be squared with claim 1's plain language.

As to Micron's first proffered ratio, Micron argues that claim 1's "data rate" encompasses a ratio of two pieces of data communicated between a memory module and a memory controller *per* every one piece of data being communicated to and from the ranks. Appellants Br. 34. Not so. Per the plain language of claim 1, the claimed "data rate" reflects transmission of data *between* components and not a ratio of two rates across different pairs of devices. In the preamble, claim 1 requires a data rate between the memory module and the memory controller. J.A. 93, 42:12–14. In the body of the claim, claim 1 requires a specified data rate between the logic circuit and ranks. J.A. 93, 42:28–34. Thus, in the context of claim 1, a "data rate" refers to a rate at which data is transmitted between components, i.e., data transmission between memory module and memory controller (preamble) and data transmission within data ranks (body of claim). This understanding of the claim necessarily excludes Micron's proffered ratio, which is merely a ratio of two rates across different pairs of devices.

As to Micron's second proffered ratio, Micron argues that claim 1's "data rate" encompasses pieces of data per strobe cycle. Appellants Br. 36. We reject this

construction. Claim 1 requires ranks to send data strobes, in addition to other data signals, at "the specified data rate." J.A. 93, 42:49–58. Thus, in the context of claim 1, for the data rate to have meaning, the baseline by which to measure the "specified data rate" for data strobes cannot be data strobes themselves. Thus, Micron's argument that data per strobe cycle could be a "specified data rate" fails.

 In sum, we reject Micron's argument that the Board implicitly misconstrued claim 1's "specified data rate."

## II.

Micron next argues that the Board's motivation-to-combine analysis in the -745 IPR Proceeding was legally flawed in two respects.

## A.

Micron argues that the Board legally erred because it required Micron to demonstrate a motivation to combine prior art to arrive at claim limitation 15.6, as opposed to claim 15 as a whole. Appellants Br. 40–43. Specifically, Micron argues it was error for the Board to find no motivation to combine Halbert's Figures 2 and 4 to arrive at claim limitation 15.6 when Micron already established a motivation to combine these two figures for claim limitations 15.4 and 15.5. *Id.* Micron's argument, however, rests on a mischaracterization of the Board's decision.

Micron never established, nor did the Board find, that there was a motivation to combine Figures 2 and 4 for claim limitations 15.4 and 15.5.[6] Rather, the Board determined

---

[6]    Micron cites to the Board's final written decision as purporting to show that the Board agreed with its arguments that there was a motivation to combine Figures 2 and 4 to arrive at claim limitations 15.4 and 15.5. Appellants Br. at 41–42 (citing J.A. 23–25). These pages cited,

that Micron failed to show a motivation to combine Figures 2 and 4 to arrive at the "claimed invention," which requires a memory module with ranks that are configured to receive active and non-active chip signals. J.A. 31. Thus, contrary to Micron, the Board did not look at claim limitation 15.6 in isolation but rather considered its requirements for active and non-active chip signals in the context of "the subject matter as a whole, not separate pieces of the claim." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)).

B.

Micron argues that it was legal error for the Board to require it show a motivation to combine Figures 2 and 4 to operate in a concurrent operation when it was "undisputed" that Halbert disclosed a memory module that operates non-concurrently. Appellants Br. 46. We are not persuaded.

First, as an initial matter, Micron mischaracterizes the record. The Board did not find that Halbert discloses non-concurrently run memory modules but rather acknowledged that one statement in Halbert "*suggests* that the memory need not be limited to concurrently-operating ranks." J.A. 30 (quoting J.A. 1341 ¶30 (emphasis added)).

Second, even considering that Halbert suggests non-concurrently run memory modules, Micron fails to identify legal error in the Board's decision. Here, Micron rested its motivation-to-combine argument on a combination of Halbert's Figures 2 and 4. Considering this, the Board found that Halbert's Figure 4, the embodiment that Micron relied on as disclosing claim 15's memory module, operated with concurrently run ranks for the purpose of achieving increased throughput. J.A. 29. The Board then found

---

however, are simply the Board's summary of Micron's arguments as to claim limitations 15.4 and 15.5. J.A. 23–25.

fundamental differences between Figures 2 and 4, namely, that Figure 2's chip select signals would "eliminate[]" Figure 4's goal of operating concurrently to increase memory throughput. J.A. 30. The Board then concluded that Micron failed to address these differences when arguing that a skilled artisan would be motivated to combine these references. J.A. 31. There is no legal error here. "The obviousness inquiry does not merely ask whether a skilled artisan could combine the references, but instead asks whether they would have been motivated to do so." *Adidas AG v. Nike, Inc.*, 963 F.3d 1355, 1359 (Fed. Cir. 2020) (citation modified). Central to the motivation-to-combine inquiry is consideration of fundamental differences between the references. *Id.* Here, the Board properly considered the differences between Figures 2 and 4 when assessing Micron's motivation-to-combine argument.

## III.

Micron argues that in the -745 IPR Proceeding, the Board erred in construing claim limitation 15.6. Appellants Br. 48–51. Specifically, Micron argues that the Board required claim 15's non-active signals to be sent to *the ranks*. But, according to Micron, there is no limitation in the claim as to where non-active signals may be sent. Appellants Br. 50.

As previously noted, we need only construe terms to the extent necessary to resolve the patentability controversy. *Voice Tech Corp.*, 110 F.4th at 1341. Here, there is no need for us to determine whether claim limitation 15.6 requires that non-active chip select signals be sent only to the ranks. No party disputes that claim 15 requires the ranks to receive *active chip select signals*. *See* Appellants Br. 48–50; Response Br. 64. Micron's additional motivation-to-combine argument rested on its position that Halbert's module controller sent the active chip select signals to the multiplexer, and not the ranks. J.A. 31–32. Thus, as the Board found, Halbert's active chip select signals are not received

by the ranks but rather by the multiplexer, a separate component in the memory module. J.A. 32. Micron does not dispute this finding on appeal. *See* Appellants Br. 48–52. As such, Micron's alternative motivation to combine argument fails, regardless of whether claim limitation 15.6 requires non-active chip select signals to be sent only to the ranks.

In sum, we see no error with the Board's determination that Micron's alternative motivation-to-combine argument fails.

## CONCLUSION

We have considered Micron's remaining arguments and find them unpersuasive. For the reasons provided, we affirm.

## AFFIRMED

### COSTS

Costs for appellee.